IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **ROKIOT USA, LLC,** | |
| Plaintiff, | C.A. No. 23-506 |
| v. | |
| **EUROTECH S.p.A.,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Rokiot USA, LLC ("Rokiot") files this suit against Defendant Eurotech S.p.A. ("Eurotech") for infringement of U.S. Patent Nos. 7,895,257 and 8,631,063 (collectively, the "Asserted Patents").

Defendant Eurotech infringes the Asserted Patents by providing, among other things, the Eurotech Everyware IoT ("Internet-of-Things"), including the EveryWare Cloud, EveryWare Software Framework, and the IoT Edge Gateways.

### THE PARTIES

1. Plaintiff Rokiot is a Delaware limited liability company headquartered in Winters, Texas.

2. Eurotech is an entity organized and existing under the laws of Italy and headquartered at Via Fratelli Solari 3/a, 33020 Amaro (UD) – Italy. Eurotech is involved in the manufacture, sale, marketing and distribution of certain Eurotech-branded software, hardware, and computing platforms in Texas, this judicial district, and the United States, including those accused of infringement in this case. Eurotech has designated Joel Whitehead at 9668 Madison Blvd., Suite 101,

Madison, Alabama 35758 as Eurotech's agent for service of process in the United States.

3. Rokiot's founder, Dr. Sumi Helal is an active pioneer in the IoT space. Among his many inventions, the Asserted Patents represent Dr. Helal's early work developing an IoT platform that enables integration of heterogeneous devices. Eurotech practices Dr. Helal's inventions claimed in Rokiot's patents.

## JURISDICTION AND VENUE

4. This is a patent suit brought under the United States Patent Act, namely 35 U.S.C. §§ 271, 281, 283, 284, and 285, among other laws. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

5. This Court has personal jurisdiction over Eurotech because it has substantial, systematic, and continuous contacts within this judicial district. Eurotech actively directs sales and marketing activities related to the accused products throughout the United States, including Texas and this judicial district.

6. Eurotech has availed itself of the laws and protections of the United States (including in the filing of lawsuits) and submitted itself to and sought rights from United States governmental agencies in the furtherance of its business in the United States, including Texas and this judicial district. For example, Eurotech owns trademark registrations for certain trademarks related to its sales, marketing, and offers for sale of the accused products and patents related to the accused products.

7. Eurotech operates a website at www.eurotech.com that includes sales and marketing information directed to the United States, including Texas and this judicial district.[1] *See*, *e.g.*,

---

[1] Eurotech also maintains an active presence on social media with regard to the accused products directed to the United States and this judicial district. *See*, *e.g.*, https://www.linkedin.com/company/eurotech/ (LinkedIn); https://www.youtube.com/user/eurotechchannel (YouTube).

www.eurotech.com (providing English and Italian versions of website); www.eurotech.com/#products (identifying accused products and United States partners); https://www.eurotech.com/about-us/; https://www.eurotech.com/about-us/#investors. Eurotech is legally able to do business in Texas and has considered Texas law, rules, and regulations in doing business in Texas, including in connection with its sales and marketing of the accused products.

8. Eurotech makes or manufactures products and systems accused of infringement, including the EveryWare Cloud, EveryWare Software Framework, and the IoT Edge Gateways. Almost half (i.e., approximately 40%) of Eurotech's revenue is from end-users in the United States. Eurotech sells and makes offers for sale of the accused products directly and through United States partners (e.g., hyperscalers and system integrators) including IBM, RedHat, Microsoft, and Amazon. Rokiot believes some percentage of Eurotech's revenue, sales, and marketing activities (including offers for sale) are made, directed to, and/or occur in Texas and this judicial district. Eurotech regularly attends conferences and participates in industry events in the United States and, on information and belief, in Texas and this judicial district in furtherance of its sales, marketing, and offers for sale of the accused products. Eurotech pays employees and has formed subsidiaries in the United States to sell, market, and offer for sale the accused products including, on information and belief, in Texas and this judicial district. Eurotech maintains control and direction over these employees and subsidiaries and each acts for the benefit of Eurotech.

9. Eurotech markets, sells, offers for sale, and/or places the products and systems accused of infringement in this case in the stream of commerce with the knowledge, understanding, and expectation that such products will be sold in the United States, Texas, and in this judicial district. For example, Eurotech end-user license agreements for components of the accused prod-

ucts require the end-user to enter an agreement directly with Eurotech. Upon information and belief, a substantial part of the events giving rise to the claims alleged herein have occurred in this judicial district in that Eurotech has committed acts of infringement and/or acts that are accused of infringement in this case including marketing, selling, and/or offering for sale the products accused of infringement in this case in Texas and this judicial district.

10. Alternatively, Eurotech markets, sells, and/or offers for sale the products and systems accused of infringement throughout the United States which subjects Eurotech to personal jurisdiction in Texas and this judicial district.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b). Upon information and belief, Eurotech has committed acts of infringement in Texas and in this judicial district. Venue is further proper in this judicial district pursuant to 28 U.S.C. § 1391(c)(3). Eurotech is a foreign corporation that may be sued in any judicial district.

## BACKGROUND

### A. PLAINTIFF ROKIOT

12. Rokiot was founded by and is controlled by Abdelsalam ("Sumi") Helal, Ph.D, a widely recognized pioneer of the IoT. Professor Helal is a senior faculty member in the Computer & Information Science and Engineering Department at the University of Florida and serves as Director of its Mobile and Pervasive Computing Laboratory. Dr. Helal is a Fellow of the ACM, IEEE, AAAS, AAIA, IET, and a member of Academia Europaea.

13. His active areas of research focus on architectural and programmability aspects of the IoT, service-oriented IoT architectures, IoT edge intelligence, and pervasive/ubiquitous systems and their human-centric applications, particularly in the Digital Health area.

14. At the University of Florida, Dr. Helal co-founded and directed the Gator Tech

Smart House, a real-world deployment project aimed at identifying key barriers to and opportunities for implementing the Smart Home concept.

15. The Gator Tech Smart House was an experimental facility for applied research, development, and validation of IoT technology in the domains of elder care and digital health. It garnered widespread attention as a showcase of assistive technologies developed by Dr. Helal and his co-inventors that are enabled by the inventions claimed in the Asserted Patents. Notable features of the Gator Tech Smart House included a smart mailbox that sensed when mail arrived, window blinds that automatically controlled light and privacy, a smart bed that monitored sleep patterns, and a floor that tracked occupants' level of activity and detected a fall.

16. In 2006, Dr. Helal co-founded Pervasa, Inc., a University of Florida technology startup focused on commercializing the modular architecture successfully proven in the Gator Tech Smart House.

17. Pervasa's Atlas platform and middleware enabled a plug-and-play framework for sensor/actuator networks. Atlas devices appeared in the framework automatically as they were added and powered on. Atlas applications included smart homes, healthcare, and asset tracking.

18. In 2007, Pervasa won the Silver "Best of Sensor Expo Award" beating University of California Berkeley's Crossbow, which took the Bronze.

19. While he is a technologist at heart, Dr. Helal has founded ventures to commercialize IoT and Digital Health technologies and brought to market important inventions. The Patent Office recognized the efforts of Dr. Helal, and his co-inventors King, Bose, Pickles, Russo, Ploeg, Zabadani, and Kouche, by awarding patents such as those infringed by Eurotech that cover Rokiot's novel IoT platform technologies. Leading technology companies have recognized Dr. Helal's inventions and licensed the patents protecting them.

20. The University of Florida assigned the patents-in-suit to the original inventors in 2013, and they assigned their interests to Rokiot in 2017.

B. **THE ASSERTED PATENTS**

21. Rokiot is the owner, by assignment, of all rights, title and interest in and to U.S. Patent Nos. 7,895,257 (the "'257 Patent") and 8,631,063 (the "'063 Patent") both titled "Modular Platform Enabling Heterogeneous Devices, Sensors, and Actuators to Integrate Automatically into Heterogeneous Networks."

22. A true and correct copy of the '257 Patent is attached as **Exhibit A**.

23. A true and correct copy of the '063 Patent is attached as **Exhibit B**.

24. As the sole owner of the '257 and '063 Patents, Rokiot holds all substantial rights in and under the patents, including the right to grant sublicenses, exclude others, and to enforce, sue, and recover damages for past, present, and future infringement.

25. The United States Patent Office issued the '257 Patent on February 22, 2011, and issued the '063 Patent on January 14, 2014.

26. The '257 and '063 Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

27. The Asserted Patents generally are directed to a platform for integrating heterogeneous devices (e.g., sensors and actuators) and applications. The specification of the Asserted Patents describes the applicability of the patented technology to remotely controlled appliances, lights, doors, coffee machines, temperature controls, home theater systems, communication systems, security cameras, surveillance equipment, and the like. '063 Patent at 1:21-27.[2] The Asserted

---

[2] The '063 Patent and '257 Patent share a common specification. The Complaint cites to the '063 Patent, but parallel citations may be found in the '257 Patent.

Patents address problems related to deploying such systems and integrating new devices.

28. Previous systems lacked a refined way of achieving "modularity" where the devices could be added to a system without extensive integration and configuration overhead. In addition, previous systems that attempted to provide scalable solutions focused heavily on sensors (e.g., temperature sensors, pressure sensors) without sufficient regard for scaled integration of actuators.

29. The claimed subject matter of the Asserted Patents describes, among other things, scalable, reliable, and secure data ingestion (e.g., from sensors) and command and control messaging (e.g., to actuators). The Asserted Patents relate to platforms that provide a uniform interface to any type of sensor, actuator, or connected device. '063 Patent at 5:20-23.

30. By providing the capability to represent connected devices automatically as software services to programmers and users, a larger number of devices may be supported. '063 Patent at 4:8-30. The inventors recognized a "need for a modular, service-oriented sensor and actuator platform specifically designed to support the development of scalable pervasive computing spaces." *Id.* at 4:28-30. They further recognized that "development of smart spaces is very different in goals and requirements from the typical sensor network application." *Id.* at 5:21-22.

31. Benefits provided by the claimed inventions include: (i) interchangeability of various sensors and actuators without the need for cumbersome reworking of the platform and/or associated software; (ii) enabling users of the platform to control, and interact with, the sensors and actuators in a higher-level language without the need to program at the hardware level of the devices; and (iii) interchangeability of the hardware modules (e.g., one communication module can be interchanged with another to allow for the use of different networking technologies without reworking of other modules). '063 Patent at 5:52-63.

32. Components of a disclosed embodiment include a hardware platform, a middleware

module, and one or more "software services" that represent an active object. In the normal operation described in the Asserted Patents, the hardware platform communicates with at least two active objects, where at least one active object is an actuator and one active object is a sensor. Figures 1 (showing an example of aspects of an embodiment of the claimed inventions), 7 (showing overall information flow through an embodiment of the claimed inventions), and 8 (showing an example of aspects of an embodiment of the claimed inventions) of the Asserted Patents are examples of the overall architecture, system, and method. Aspects of the architecture, systems, and methods as further described in the specification are claimed in the Asserted Patents.

## C.    DEFENDANT EUROTECH

33.    Eurotech makes, uses, sells, offers for sale, imports, licenses, tests, develops, and/or distributes IoT platforms and systems that embody the asserted claims of Rokiot's Asserted Patents.

34.    Eurotech's Everyware IoT platform and systems include the EveryWare Cloud, EveryWare Software Framework, and the IoT Edge Gateway products. Eurotech markets its Everyware IoT platforms and systems and describes these products on its website www.eurotech.com. According to Eurotech, "Everyware Cloud addresses the integration needs of IoT applications. The platform provides all the services required for the management of IoT gateways and devices in the field, including configuration management, application life-cycle management, and remote access. It also provides the services needed to collect data from the field and integrate it into downstream applications, business processes, dashboards and reports. Being Everyware Cloud the integration hub between the IoT devices and the IT infrastructure, we refer to it as the *IoT Integration Platform*." *See* https://ec.eurotech.com/docs.

35.    Eurotech describes its Everyware IoT platform and systems in a manner such that

the Everyware IoT platform and systems satisfy each and every element of one or more of the claims of each of the Asserted Patents. Overviews of the relevant Eurotech platform and system architectures are shown at Eurotech websites https://ec.eurotech.com/docs and https://esf.eurotech.com/docs/architecture.

36. Eurotech provides products, infrastructure and services including servers, cloud-server infrastructure, IoT gateways, hubs, middleware, software, hardware, drivers, and interfaces to facilitate communication between IoT devices (e.g., user equipment) and software applications in various infringing combinations for uses such as those described herein. For convenience, these accused instrumentalities (e.g., including any combination of components) may be referred to herein as Eurotech's "IoT System," "IoT products," or "IoT systems."

37. Eurotech makes, uses, sells, offers for sale, imports, licenses, tests, develops, and/or distributes systems including the products and infrastructure (e.g., hardware platform, IoT cloud products and service), hubs, apps, kits, and automation systems as described herein.

38. Eurotech's IoT systems practice the one or more claims of the each of the '063 and '257 Patents.

39. Eurotech owns, operates, maintains, and/or controls (either directly or through a wholly owned subsidiary) the www.eurotech.com and related domains (e.g., ec.eurotech.com and esf.eurotech.com) and makes information about the products accused of infringement herein available. Eurotech publishes information about its IoT products and services at these websites and Rokiot hereby incorporates by reference the Eurotech IoT System-related content of the domains (and sub-domains) and web pages (and linked web pages) referenced above.

40. Eurotech's IoT System includes a hardware platform (e.g., edge, gateway, and platform infrastructure) and a middleware module including servers, cloud-server infrastructure, IoT

gateways, hubs, middleware, software, hardware, drivers, and interfaces. The IoT system's middleware is in or executed on the hardware platform and intermediates between the active objects (e.g., field devices including sensors and actuators) and applications (e.g., cloud or IoT applications).

41. Eurotech's middleware, for each active object, generates software services that represent the active objects. Eurotech may refer to these software services and related functionality as "assets" or "digital twins." Assets or Digital twins represent field devices. These software services (generated to represent active objects) may be based on a driver that includes information and behavioral components of the active objects.

42. Eurotech provides for communication between applications (written in high level languages) and active objects through use of at least one software service (e.g., the "digital twin" or asset) as described above. Eurotech's IoT System, for example, provides APIs and means for communication through HTTP calls. The middleware convert the communication (including commands) into low-level commands that the active objects can understand and act upon. The Eurotech IoT System also includes applications configured to receive useable data including data sensor data streams from deployed devices via the "digital twin" or asset. The middleware convert "raw data" received from an active object to useable data.

43. The claims of the Asserted Patents, as described below, are satisfied by the Eurotech IoT System as described above.

## COUNT I

### INFRINGEMENT OF U.S. PATENT NO. 7,895,257

44. Rokiot incorporates the preceding paragraphs herein by reference.

45. Eurotech jointly (with, for example, its customers and partners) and individually

practices the '257 Patent by providing, testing, using, distributing, developing, making, selling, offering for sale, importing, and/or licensing the accused instrumentalities without consent or authorization.

46. The facts alleged above including the referenced publicly available materials published by Eurotech show that Eurotech practices each and every element or step of at least claims 1, 2, 3, 4, 13, 14, 16, 17, 18, 27, 28, 32, 33, 34, and 35 of the '257 Patent.

47. Eurotech has known about the '257 Patent and how the accused instrumentalities infringe since at least December 1, 2022. Rokiot and Eurotech have engaged in pre-filing licensing discussions. Eurotech has further notice and knowledge of the '257 Patent by this Complaint.

48. Eurotech directly infringes each and every asserted claim literally, and to the extent an element or step is found not to be literally met by or in the accused instrumentalities, it is met under the doctrine of equivalents.

49. Eurotech individually and jointly (with, for example, its customers and partners) infringes the '257 Patent. To the extent all steps or limitations of any asserted claim are not practiced by a single entity, then all steps or limitations, as the case may be, are practiced by, controlled by, or attributable to Eurotech.

50. Eurotech conditions its customers' receipt of Eurotech's services upon the integration and/or incorporation of Eurotech's software and scripts, and Eurotech dictates the manner and timing of performance (e.g., pursuant to APIs and SDKs) to direct and control the performance of processes that practice the subject matter claimed in the '257 Patent.

51. Eurotech's acts—including inducing, encouraging, aiding, abetting, directing, importing, and instructing others, namely its customers, developers, and end users of the accused instrumentalities, including by providing user guides, instruction materials and customer support,

to practice the '257 Patent—constitute indirect infringement under 35 U.S.C. §§ 271(b)-(c).

52. Eurotech provides, makes, sells, uses, imports, licenses, offers to sell, and promotes the Eurotech IoT System and platform and the specifically accused products having features and functionality described herein with the specific intent that end users and customers use the accused instrumentalities in an infringing manner on and in conjunction with the Eurotech IoT System and platform.

53. As alleged herein, the Eurotech IoT System and components are material to practicing the '257 Patent, have no substantial non-infringing use, and are known to Eurotech by notice to be specially made or adapted for use in infringing the '257 Patent.

54. Rokiot has been harmed as a result of Eurotech's infringing conduct. Eurotech is liable to Rokiot in an amount that adequately compensates Rokiot for Eurotech 's infringement, which compensation cannot be less than a reasonable royalty together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

### INFRINGEMENT OF U.S. PATENT NO. 8,631,063

55. Rokiot incorporates the preceding paragraphs herein by reference.

56. Eurotech jointly (with, for example, its customers and partners) and individually practices the '063 Patent by providing, testing, using, distributing, developing, making, selling, offering for sale, importing, and/or licensing the accused instrumentalities without consent or authorization.

57. The facts alleged above and publicly available materials published by Eurotech show that Eurotech practices each and every element or step of at least claims 1, 2, 3, 9, 12, 13, 16, 17, 18, 19, 20, 21, 24, 30, 31, 35, 37, 38 of the '063 Patent.

58. Eurotech has known about the '063 Patent and how the accused instrumentalities infringe since at least December 1, 2022. Rokiot and Eurotech have engaged in pre-filing licensing discussions. Eurotech has further notice and knowledge of the '063 Patent by this Complaint.

59. Eurotech directly infringes each and every asserted claim literally, and to the extent an element or step is found not to be literally met by or in the accused instrumentalities, it is met under the doctrine of equivalents.

60. Eurotech individually and jointly (with, for example, its customers and partners) infringes the '063 Patent. To the extent all steps or limitations of any asserted claim are not practiced by a single entity, then all steps or limitations, as the case may be, are practiced by, controlled by, or attributable to Eurotech.

61. Eurotech conditions its customers' receipt of Eurotech's services upon the integration and/or incorporation of Eurotech's software and scripts, and Eurotech dictates the manner and timing of performance (e.g., pursuant to APIs and SDKs) to direct and control the performance of processes that practice the subject matter claimed in the '063 Patent.

62. Eurotech's acts—including inducing, encouraging, aiding, abetting, importing, directing, and instructing others, namely Eurotech's customers, developers, and end users of the accused instrumentalities, including by providing user guides, instruction materials and customer support, to practice the '063 Patent—constitute indirect infringement under 35 U.S.C. §§ 271(b)-(c).

63. Eurotech provides, makes, sells, uses, imports, licenses, offers to sell, and promotes the Eurotech IoT System and platform and the specifically accused products having features and functionality described herein with the specific intent that end users and customers use the accused instrumentalities in an infringing manner on and in conjunction with the Eurotech IoT System and

platform.

64. As alleged herein, the Eurotech IoT System and components are material to practicing the '063 Patent, have no substantial non-infringing use, and are known to Eurotech by notice to be specially made or adapted for use in infringing the '063 Patent.

65. Rokiot has been harmed as a result of Eurotech's infringing conduct. Eurotech is liable to Rokiot in an amount that adequately compensates Rokiot for Eurotech's infringement, which compensation cannot be less than a reasonable royalty together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## NOTICE

66. Rokiot has complied with the notice requirements of 35 U.S.C. § 287 and provided actual notice of infringement prior to filing this Complaint.

## JURY DEMAND

67. Rokiot hereby demands a trial by jury on all claims, issues, and damages so triable.

## PRAYER FOR RELIEF

68. Rokiot prays for the following relief:

    (a) That Eurotech be summoned to appear and answer;

    (b) That the Court enter an order declaring that Eurotech has infringed the '257 and '063 Patents;

    (c) That the Court find this to be an exceptional case under 35 U.S.C. § 285, and award Rokiot its reasonable attorney's fees;

    (d) That the Court grant and award Rokiot judgment against Eurotech for all actual, compensatory, consequential, special, punitive, exemplary, increased, and/or statutory damages, including any applicable additional

damages pursuant to 35 U.S.C. § 284, and, if necessary, an accounting of all damages; pre- and post-judgment interest as allowed by law; ongoing, post-judgment damages; and reasonable attorney's fees, costs, and expenses incurred in this action; and

(e)   That Rokiot be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: November 2, 2023

Respectfully submitted,

/s/ *Christopher T. Bovenkamp*
STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CHRISTOPHER T. BOVENKAMP
  Texas State Bar No. 24006877
  cbovenkamp@ccrglaw.com
**CHARHON CALLAHAN ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Plaintiff ROKIOT USA, LLC*